## Commonwealth *v.* Byrd, Appellant.

Argued March 22, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William H. Brown, III,* with him *William F. Hall, Jr.,* for appellant.

*William J. Stevens, Jr.,* Assistant District Attorney, with him *John J. DiPaul, II,* and *Joseph M. Smith,* Assistant District Attorneys, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, May 2, 1966:

On November 23, 1964, defendant Byrd was arrested and charged with the murder of two persons; he was also charged with aggravated assault and assault and battery with intent to murder a third person. On January 5, 1965, a true bill of indictment was returned

by the Grand Jury on all of the charges set forth above. On September 8, 1965, defendant's petition for a psychiatric examination was granted by the Court of Quarter Sessions. Thereafter, the Commonwealth filed an application for a neuro-psychiatric examination of the defendant. On January 7, 1966, the lower Court granted the petition of the Commonwealth and ordered the defendant to submit to such examination subject to the important limitation that he not be compelled to answer any questions propounded to him by those making the examination. From that Order defendant took this appeal.

Defendant first strongly contends that to require him to submit to such an examination is violative of the Fifth Amendment, which ordains and protects his right against self-incrimination. This Court decided in *Commonwealth v. Musto*, 348 Pa. 300, 35 A. 2d 307, that such an examination does not violate a defendant's right against self-incrimination, provided that, as in the present Order, he is not compelled to answer any questions propounded to him. In *Commonwealth v. Musto*, Chief Justice HORACE STERN, speaking for a unanimous Court said (pages 305-307): "Realizing that an attempt would be made to prove defendant insane at the time of the murder, the district attorney obtained permission from the court to have alienists examine him in prison. His counsel found fault with this proceeding on the ground that it constituted a violation of defendant's constitutional right not to be compelled to give evidence against himself. While the exact question thus presented has apparently not been ruled upon by either of our appellate courts, it has arisen in many other jurisdictions, and these have quite uniformly held that the constitutional immunity from self-incrimination does not apply to a compulsory examination to determine the prisoner's physical or mental condition for the purpose of testify-

ing in regard thereto, provided, of course, that he be not compelled to answer any questions propounded to him by those making the examination. The purpose of the constitutional provision is to prohibit the compulsory oral examination of the prisoner either before or at trial,—to prevent his being required to incriminate himself by speech or the equivalent of speech: Commonwealth v. Valeroso, 273 Pa. 213, 219, 220, 116 A. 828, 830. 'The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material': per Mr. Justice HOLMES in Holt v. United States, 218 U.S. 245, 252, 253. 'Not compulsion alone is the component idea of the privilege, but testimonial compulsion . . . Unless some attempt is made to secure a communication, written or oral, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one': 8 Wigmore on Evidence (3d ed.) 375, sec. 2265."

We reiterated this principle as recently as 1961. See *Commonwealth v. Butler,* 405 Pa. 36, 173 A. 2d 468, where we said (pages 44-45): ". . . The privilege against self-incrimination does not prohibit the introduction of evidence given by a defendant voluntarily: Commonwealth v. Bryant, 367 Pa. 135, 79 A. 2d 193 (1951), cert. den. 341 U.S. 954, 71 S. Ct. 1007. In addition, the personal characteristics and behavior of the defendant were open and observable to these doctors during his incarceration. This is not information of a written or spoken nature which the constitutional privilege against self-incrimination is designed to protect. See 32 A.L.R. (2d) 430; State v. Myers, 220 S.C. 309, 67 S.E. 2d 506 (1951); Hunt v. State, 248 Ala. 217, 27 So. 2d 186 (1946); Ingles v. People, 92 Colo.

518, 22 P. 2d 1109 (1933); Commonwealth v. DiStasio, 294 Mass. 273, 1 N.E. 2d 189 (1936); Noelke v. State, 214 Ind. 427, 15 N.E. 2d 950 (1938). In Commonwealth v. Musto, 348 Pa. 300, 35 A. 2d 307 (1944), this Court held that the constitutional immunity from self-incrimination does not apply even to a compulsory examination to determine the defendant's physical or mental condition for the purpose of enabling the examiner to testify in regard thereto, provided the defendant is not *compelled* to answer any questions propounded to him by the examiner. See also, Commonwealth v. Kravitz, 400 Pa. 198, 161 A. 2d 861 (1960)."

Defendant urges this Court to overrule the *Musto* and *Butler* decisions; this we refuse to do. Principles of fairness and justice not only to the defendant but also to the Commonwealth, fortified by the doctrine of stare decisis, require us to adhere to the principle or rule enunciated in said cases. Accordingly the Order of the lower Court requiring defendant to submit to such neuro-psychiatric examination was proper and valid.

A more difficult question arises as to the right to appeal from this Order. Defendant admits that ordinarily no appeal would lie from an order granting a neuro-psychiatric examination prior to trial, or before final judgment has been entered, since such orders are generally interlocutory and unappealable. However, he contends that while this Order is interlocutory, it is an appealable Order because it falls within the "exceptional circumstances" doctrine enunciated in *Commonwealth v. Kilgallen*, 379 Pa. 315, 320, 108 A. 2d 780, which permits appeals (1) in cases where basic human rights or (2) public interest of great importance are involved, or (3) to prevent a great injustice to a defendant. In the *Kilgallen* case, where this Court refused to quash an appeal from the grant of a rule to show cause why testimony should not be taken in sup-

port of motions to quash indictments, the Court said (page 320) : "The Commonwealth contended in the Superior Court and contends here that no appeal lies from the refusal of a motion to quash an indictment. It is certainly true, as stated by the Superior Court, that ordinarily a defendant charged with crime does not have the right of appeal before his trial and conviction nor thereafter until final judgment and sentence. However, the Superior Court held that there may be exceptions to this rule, citing Superior and Supreme Court cases, inter alia, Commonwealth v. Trunk et al., 311 Pa. 555, 167 A. 333, where at p. 565 it was stated that the rule '. . . should not be held one of universal application.', and Commonwealth v. Ragone, 317 Pa. 113, 176 A. 454, where this Court at p. 126 said: '. . . But this rule has, in exceptional cases and to safeguard basic human rights, been construed as not being one of unyielding inflexibility.'. The Superior Court went on to say: 'In our view the question of the validity of the indictments in these cases is one which under the circumstances should be decided in limine with finality. The nature of the charges affects the public interest, and the grounds for appellant's claim of immunity, provide the exceptional circumstance which justify us in entertaining the appeals in these cases.'. We are not disposed to disagree with this conclusion."

In *Commonwealth v. Novak,* 384 Pa. 237, 120 A. 2d 543, the Court said (page 240) : "As a general rule, an appeal will not lie in a criminal proceeding until judgment of sentence has been passed. It has been said, however, that this rule is not one of unyielding inflexibility. Where the interlocutory order, for all practical purposes, presents a somewhat final aspect, an appellate court will review it in order to safeguard basic human rights or to prevent a great injustice to a defendant."

We believe that this interlocutory Order does not fall within "the exceptional circumstances doctrine," and therefore the appeal must be quashed. Cf. *Commonwealth ex rel. Fisher v. Stitzel,* 418 Pa. 356, 211 A. 2d 457; *Commonwealth ex rel. Tabb v. Youth S. C. Super.,* 407 Pa. 466, 183 A. 2d 317; *Commonwealth ex rel. Nichols v. Lederer,* 193 Pa. Superior Ct. 482, 485-490, 165 A. 2d 711, affirmed 404 Pa. 218, 172 A. 2d 319.

Appeal quashed.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. This appeal from an adverse ruling of the court below cannot be fairly characterized as interlocutory, since to do so would effectively and realistically preclude appellant from contesting the right of the Commonwealth to conduct a neuropsychiatric interrogation at this time. Unless appeal lies from the order of the court directing such an interrogation, whatever right defendant may have to bar such an examination would be lost. Cf. *Commonwealth v. Kilgallen,* 379 Pa. 315, 108 A. 2d 780 (1954).

Since I believe that the present appeal lies, it is appropriate that I express my view on the merits. The record reveals that the reason assigned by the Commonwealth in its application to the court for permission to conduct a neuropsychiatric examination was the *possibility* that defendant *may* assert the defense of insanity. However, nothing in the record supports the Commonwealth's allegation that defendant's sanity will be put in issue and at this stage of the proceedings the matter is pure supposition.

Accordingly, since the privilege of making a neuropsychiatric examination does not belong to the Commonwealth as of right, I must conclude that the court below erred in granting the application and ordering defendant to submit to such an examination.

Unlike the case in *Commonwealth v. Musto,* 348 Pa. 300, 35 A. 2d 307 (1944), there is no indication at this stage of the proceedings other than the unsupported allegation of the Commonwealth that defendant will assert the defense of insanity or raise the issue of competency to stand trial. If defendant's sanity or mental capacity does become an issue in the case, the Commonwealth may, at that time, petition the court and assign proper reasons for the allowance of a psychiatric examination such as was involved in *Commonwealth v. Musto,* supra.