Commonwealth, Appellant, *v.* Evans.

Argued June 19, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Joseph M. Loughran,* District Attorney, with him *John K. Best* and *John N. Scales,* Assistant District Attorneys, for Commonwealth, appellant.

*Edgar P. Herrington, Jr.,* for appellee.

OPINION BY WATKINS, J., September 15, 1967:

This is an appeal by the Commonwealth from an order of the Court of Quarter Sessions of Westmoreland County suppressing the evidence obtained under a search warrant. The Commonwealth's appeal is taken under the authority of *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963), which permits such an appeal when the Commonwealth can no longer proceed with the prosecution after the evidence involved is suppressed.

On the evening of January 4, 1966, at 10:30 p.m., an alarm, which had been installed in the home of Mrs. Richard Paul, by the Bell Telephone Company, was triggered. The purpose of the installation of the alarm by the company was to alert those in the Paul home that someone was tampering with the coin box in the public telephone booth located almost directly across from the Paul home. The Pauls were then to alert the company and the police of apparent tampering.

As a result of the alarm, Mrs. Paul immediately called the Township Police Station. She informed the police that she and her children were observing the booth from a window in the home. They observed a man leaving the booth and getting into a station wagon which was dark in color—wine-colored or maroon—either a Pontiac or an Oldsmobile. They observed the man leave the booth and get into the station wagon, which had a luggage rack on top, and pull into traffic on Route 30 travelling in a westerly direction.

The police, when notified by the Pauls of what they had observed, radioed two patrol cars giving them the

necessary information. As a result of the information, a 1965 Oldsmobile was stopped about one and one-half miles from the telephone booth. It was a maroon Oldsmobile station wagon with a luggage rack on top.

The officer did not search the car, although he was able to observe a bag of silver coins on the floor of the car. The appellee agreed to accompany the officer to the police station but no arrest was made. The car was parked upon arrival and was not searched until a search warrant was obtained from a Township Justice of the Peace. Upon searching the car numerous articles were found including a leather bag containing two pennies, $6.34 in nickels, $22.30 in dimes, $9.50 in quarters and $11 in halves; a claw hammer; 7 pairs of assorted pliers; 1 speedy screwdriver with 4 screwdriver bits; 5 assorted screwdrivers; assorted wrenches and other articles of a suspicious nature in view of the alleged charge—47 itemized articles in all.

The search warrant in question was issued by Justice of the Peace Richard Hershberger upon the oath and affidavit of Sgt. Baker of the Township police. The affidavit reads as follows:

"Commonwealth of Pennsylvania: ss:

County of Westmoreland:

"Before me, the subscriber Richard C. Hershberger, Justice of the Peace in and for the County and Commonwealth aforesaid, personally appeared Sgt. Frank E. Baker, North Huntingdon Township Police who being duly sworn, according to law, doth depose and say that he has probable cause to believe that certain articles to-wit: Tools, i.e., files, spring steel wire, Pliers, screwdrivers and a Vice and certain United States currency in Nickels-dimes and quarters are unlawfully in the possession of one Jack R. Evans, and are located in a 1965 Oldsmobile Station Wagon, Wine (maroon) colored bearing New York registration 4719G, such vehicle having no fixed address, none can be given. Such

United States currency late to have been stolen from coin Telephone and said tools to be used as aid in such theft. Informants witnessed said vehicle at telephone booth in question, scene of alleged crime, at time alarm sounded. Informants believe a crime was committed.

(s) Frank E. Baker

(s) Richard C. Hershberger, [seal] Justice of the Peace.

SWORN and subscribed before me this 5th day of January A.D. 1966.

My Commission Expires First Monday in January, 1968."

Notes of testimony disclose that Sgt. Baker testified as follows: "Q. Did the Squire go into a hearing as to the reasonableness of your request for a search warrant? A. He did, sir. Q. Before he issued it? A. Yes, sir. Q. And did he issue that warrant? A. He did, sir." And the Justice of the Peace testified as follows: "Q. Did you inquire as to the reasonableness of the issuance of it (search warrant)? A. I did. Q. And did you feel that the request for the warrant in this case was a reasonable one or not? A. I felt that it was reasonable."

We agree with the court below that the sole issue there and here is whether "the search and seizure involved herein were made pursuant to a constitutionally-sound search warrant issued on the basis of a sufficient complaint and affidavit."

The court below relies heavily on *Commonwealth v. Smyser*, 205 Pa. Superior Ct. 599, 211 A. 2d 59 (1965), and suppressed the evidence on the ground that "the affidavit provides no basis for the detached and independent magisterial determination which the Fourth Amendment to the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution require. Under the Fourth Amendment, mere affirmance

of belief or suspicion is not enough. Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)."

The instant case can very easily be distinguished from the *Smyser* case, supra. In the first place, the officer on stopping the car and viewing the bag of coins on the floor of the car could justifiably have made a lawful arrest without a warrant and so searched the vehicle. This case presents a rather classic case for a search and seizure incident to a lawful arrest. *Com. v. One 1955 Buick Sedan (Scott, Aplnt.)*, 198 Pa. Superior Ct. 133, 182 A. 2d 280 (1962); *Commonwealth v. Czajkowski*, 198 Pa. Superior Ct. 511, 182 A. 2d 298 (1962).

But the arrest was not made, perhaps out of an abundance of caution in view of recent interpretations by the courts as to constitutional safeguards and regulations, and the appellee was asked, and did accompany the officer to the police station. The police officer then obtained a warrant. A Justice of the Peace or magistrate may properly issue a search warrant only if he can find probable cause therefor from the facts and circumstances presented to him under oath or affirmation. *Com. v. Ametrane*, 205 Pa. Superior Ct. 567, 210 A. 2d 902 (1965); *Com. v. Smyser*, supra; *Com. v. Alvarez*, 208 Pa. Superior Ct. 371, 222 A. 2d 406 (1966); *Com. v. Griffin*, 200 Pa. Superior Ct. 34, 186 A. 2d 656 (1962); *Com. v. Scull*, 200 Pa. Superior Ct. 122, 186 A. 2d 854 (1962).

In the *Ametrane* case, supra, the application for search warrant stated as follows:

"Complaints and information received from persons of reliable and good reputation, which your affiant has reason to believe and does believe to be true, and upon which he has relied in making this affidavit that the accused takes horse bets over the telephone and from other persons at the above address all day.

"Personal knowledge, that County Detectives were assigned to investigate the original complaint; that the undisclosed agent reported the placing of horse bets and that your affiant has personally observed this location for some time and from their reports and my personal knowledge and experience in such activities the original complaint has been corroborated." We like the statement of the Commonwealth that:

"What is prohibited by both constitutions and by the case law of Pennsylvania, as herein above set forth, is the issuing of a search warrant on affidavits or complaints which are particularly conclusory in nature, which state only the affiant's belief that particular cause exists without describing in any detail the facts or circumstances upon which such a conclusion or belief is based. Every case cited holds this to be the law. The problem, however, becomes one of case by case interpretation of the particular facts existing in each separate incident. No two cases are the same. It is significant also that the Court, in the Ametrane case, emphasizes the necessity of a common-sense approach in these matters. The Court states and quotes from the U. S. Supreme Court, at page 572, as follows: 'If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.' United States v. Ventresca, 380 U.S. 102.

"Where the facts and circumstances of the case are presented to the Justice of the Peace or Magistrate in some reasonable detail and where the Justice of the Peace or Magistrate has found that probable cause does exist, the search warrant should not be invalidated simply because the facts are not detailed for the Justice of the Peace in the same manner as would be required in an indictment or for proof of guilt in a court of law.

"A common-sense approach and an examination of all of the surrounding facts of each particular case must be the touchstone for a fair and proper decision. The Court, in Ametrane, even goes so far as to suggest that in marginal cases, the benefit of the doubt should be accorded to the validity of the search warrant.

"Certainly, in the Ametrane case, the application for search warrant fell far below the standard that would be required for an indictment or for proof of guilt. In fact, the application for search warrant in Ametrane may be described as a mere skeletal outline of a few general facts for the Magistrate's consideration, and yet was approved by our Court without dissent. The Ametrane case did reach the Pennsylvania Supreme Court, at which time the Superior Court's opinion was affirmed, although the principal question discussed by the Supreme Court involved an additional reason for new trial presented by the Appellant. Com. v. Ametrane, 422 Pa. 83, cited above."

The affidavit for a search warrant in the *Ametrane* case alleged facts in a very similar manner to the facts set forth in the application for search warrant now before this Court. More definite facts upon which to form an independent judgment as to the reasonableness for issuance of a search warrant is present in the instant case than in the *Ametrane* case.

As the court below relies heavily upon the *Smyser* case, supra, let us examine the facts of that case. The

application for the warrant reads as follows: "Before me, the subscriber, one of the Justices of the Peace in and for the County aforesaid, personally came Chief William D. Brooke, of the New Hope Borough Police, who, upon his solemn oath according to law, saith that on or about the 31st day of May, 1963, in the Borough of New Hope, County of Bucks aforesaid, that as a result of investigation the deponent verily believes that a person or persons have, or will conceal narcotics, dangerous drugs and paraphernalia pertaining to the use of narcotics on the premises of the apartments located at 82 South Main Street, New Hope, Pennsylvania, contrary to Act approved September 26, 1961 by the Assembly." No substantiating facts are given whatsoever. No information was transmitted to the magistrate to enable him to make an independent and detached appraisal of the probability that a crime had been committed or was being committed. The sworn statement, "that as a result of investigations the deponent verily believes that there is sufficient evidence to believe . . ." states nothing of value, so it is not surprising that this Court in *Smyser* said, "The only way in which the Magistrate could issue a warrant on such an affidavit is by accepting the affiant's conclusions and rubber-stamping a warrant".

In the instant case the Justice of the Peace received the sworn statement of Sgt. Baker that "informants witnessed said vehicle at telephone booth in question, scene of alleged crime, at time alarm sounded". The vehicle was described with particularity. It was observed by the informant at the scene of the crime. The informant telephoned the police while the vehicle was still at the telephone booth. Vehicle fitting the description given by the informant was discovered within a few minutes, one mile and one-half from the scene of the crime. While it is admitted by the Commonwealth that the information contained in the applica-

tion admittedly falls short of the complete and conclusive proof of the crime it certainly gives the Magistrate sufficient information on which to determine that probable cause exists to issue a search warrant for a search of the said vehicle. This is certainly not a case in which the Justice of the Peace merely rubber-stamped a conclusion formed by an investigating officer.

In the *Alvarez* case, supra, the application for search warrant stated "very reliable information 100% in the past, Surveillance conducted . . .". This was held to fall in the category of rubber-stamping. In the *Griffin* case, supra, the application for search warrant was a form with blanks to be filled in. In one of the blanks there had been inserted "investigation and complaints received and investigations conducted". It was held that the reasonable cause requirement of the Constitution was satisfied.

In the *Scull* case, supra, it is emphasized that the reasonableness of search and seizure must be decided by the facts of each particular case. The Court in *Scull* further emphasized that the law relating to search and seizure is more strictly construed as to automobiles than it is to dwellings and that the reasonableness of the search and seizure in view of all of the circumstances of the case must be considered. See also: *Com. v. Copertino*, 209 Pa. Superior Ct. 63, 224 A. 2d 228 (1966) ; 11 A.L.R. 3d 1330.

In the instant case under all its facts and the extreme care of the officers in protecting the rights of the appellee by obtaining a search warrant instead of making the search as an incident of an arrest, the affidavit contained sufficient particularity so that the Justice of the Peace could make an independent judgment of the reasonableness and probable cause for the issuance of the warrant. See *Com. v. Crawley*, 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), where this Court

held that an affidavit for a search warrant may be based on hearsay information and need not reflect the personal observations of the affiant. This case also held that oral testimony before the magistrate may be considered along with the facts contained in the affidavit. Any other conclusion under all the circumstances of this case is flying into the face of commonsense. The petition to suppress the evidence should have been denied.

Appeal from the order suppressing the evidence is sustained and the record remitted to the court below for further action in conformity with this opinion.