Commonwealth, Appellant, *v.* Pomponi.

Argued January 13, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*M. Joseph Melody,* Assistant District Attorney, with him *A. Thomas Parke, III,* First Assistant District Attorney, for Commonwealth, appellant.

*John J. Duffy,* for appellee.

OPINION BY MR. JUSTICE BARBIERI, December 20, 1971:

Anthony J. Pomponi stands indicted for murder in the Court of Common Pleas of Chester County. After he had undergone several court-authorized psychiatric

examinations by his own doctors, his counsel indicated to the Court that Pomponi would raise a defense of insanity. On August 14, 1969, pursuant to an application by the Commonwealth, the lower Court granted permission for the Commonwealth's psychiatrists to examine Pomponi, provided that defense counsel be permitted to be present during the examination, and further providing: ". . . that in such examination the defendant shall not be required to impart or divulge any information either written, spoken, or otherwise which would in any way tend to incriminate him, but that the examination shall be limited to the observation of his personal characteristics and behavior as may be considered valid and appropriate by the examining physicians in the evaluation of his sanity and to any voluntary statements he may then make."

Pomponi refused to cooperate with the Commonwealth's physicians at the examination. The Commonwealth then appealed, urging that it was error for the lower Court not to direct that Pomponi cooperate, on pain of being denied at trial the opportunity to introduce expert testimony on the issue of his insanity.

On January 30, 1970, we quashed that appeal, *Commonwealth v. Pomponi,* 436 Pa. 565, 259 A. 2d 872 (1970), because it was not an appeal from a final order. Our reasoning was based on the language in that order preserving the right of the prosecution "to move for additional or further examinations of the defendant should circumstances which may develop at or prior to trial warrant the making of such an application." We explained that there was no indication "that the court below would not have issued some further order, if the examination was indeed totally ineffectual." Id. at 569.

Subsequently, the Commonwealth again petitioned for psychiatric examination. On March 25, 1970, the lower Court again ordered that the Commonwealth's

experts might examine Pomponi, and again provided that Pomponi's attorney had a right to be present at such an examination and that Pomponi "shall not be required to impart or divulge any information either written, spoken, or otherwise which would in any way tend to incriminate him." Pursuant to the Court's order, Dr. Kenneth Kool, M.D., the Commonwealth's psychiatrist, again tried to examine Pomponi. Pomponi refused to answer any questions propounded by the doctor for the purpose of his examination. The Commonwealth has again appealed.

This time we cannot quash the appeal. The language contained in the previous order preserving the right of the Commonwealth to move for additional examinations is not contained in the order now appealed. Thus, the Commonwealth can seek no further relief at the trial level from what it considers to be an invalid order. Under these circumstances, the Commonwealth should not be deprived of the opportunity to secure an appellate court evaluation of the restrictions and limitations contained in the order. Although in *Commonwealth v. Byrd*, 421 Pa. 513, 517-19, 219 A. 2d 293 (1966), cert. denied, 385 U. S. 886 (1966), we held that a *defendant* could not appeal a pretrial order for a psychiatric examination by the Commonwealth's physicians, that case is not determinative of the *Commonwealth's* right of appeal in the case now before us. As has been pointed out in two recent opinions of this Court, there is a significant difference between the Commonwealth's and the defendant's right to appeal pretrial orders in that the Commonwealth cannot appeal from an acquittal. See *Commonwealth v. Washington*, 428 Pa. 131, 134-35, 236 A. 2d 772 (1968); *Commonwealth v. Bosurgi*, 411 Pa. 56, 64, 190 A. 2d 304 (1963). Where the Commonwealth is "substantially handicapped" because of an unfavorable pretrial order

denying it the privilege of obtaining or presenting otherwise available evidence, the Commonwealth has the right to appeal that pretrial order. See *Bosurgi,* supra, at 63.

Having concluded that the Commonwealth has the right to proceed on this appeal from the lower Court's order, we now hold that the entry of that order was within the discretion of the Court in the light of three prior decisions of this Court: *Byrd,* supra; *Commonwealth v. Butler,* 405 Pa. 36, 173 A. 2d 468 (1961); and *Commonwealth v. Musto,* 348 Pa. 300, 35 A. 2d 307 (1944). In these cases our Court has ruled that while a defendant raising the defense of insanity could be compelled to attend a psychiatric examination, he could not be "compelled to answer any questions propounded to him by those making the examination." *Musto,* supra, 348 Pa. at 306. The Court in *Butler* made clear that while "the personal characteristics and behavior of the defendant were open and observable to [the Commonwealth's] doctors during his incarceration," the defendant could remain silent during an examination. 405 Pa. at 44.

The Commonwealth urges us, in effect, to overrule our decisions in *Musto, Butler,* and *Byrd* and substitute a rule permitting a defendant to be compelled, on pain of his waiving his defense of insanity, to cooperate with the examining physicians. We are unpersuaded by the Commonwealth's arguments and conclude that no change in our prior pronouncements is called for under the circumstances of this case.

The Commonwealth presents essentially two arguments. The first is that under *Schmerber v. California,* 384 U.S. 757 (1966), the fifth amendment cannot be held to protect the appellee in this case because a mandatory psychiatric examination compels a defendant to give only "physical" rather than "testimonial" evi-

dence. The Commonwealth analogizes this examination to the taking of handwriting exemplars, fingerprints, blood samples, voice identifications and other kinds of "real", "physical" or "body" evidence. Although some jurisdictions have apparently accepted this line of reasoning,[1] we do not. Our previous decisions, as well as those of the United States Supreme Court, including *Schmerber* and *United States v. Wade,* 388 U.S. 218 (1967), indicate that a defendant's answers to a psychiatrist's questions should be considered "testimonial" in nature. In *Musto* our Court cited with approval Wigmore's analysis of the difference between testimonial and physical evidence: "Unless some attempt is made to secure a communication, written or oral, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one." Wigmore, supra, §2265.[2] There can be little doubt that in answering a psychiatrist's questions a defendant would be making an oral communication involving "his consciousness of the facts and the operations of his mind."

Thus we do not agree with decisions, such as those in *United States v. Albright,* 388 F. 2d 719 (4th Cir. 1968), and *State v. Whitlow,* 45 N.J. 3, 210 A. 2d 763 (1965), which hold that the privilege does not apply to the defendant's giving information which may be used to prove that he had the requisite mental capacity to be held criminally liable, on the ground that such information is not self-incriminating. We think that

---

[1] See cases collected in 8 Wigmore, Evidence §2265 n. 12 (McNaughton Rev., 1961).

[2] Elsewhere Wigmore states that "the privilege [against self-incrimination] is limited to testimonial disclosures. It was [historically] directed at the employment of legal process to extract from the person's own lips an admission of guilt . . . ." Wigmore, supra, §2263.

this limitation of the privilege is an arbitrary one in light of the fact that mental capacity is itself one of the indispensable elements of a conviction. See *People v. French*, 12 Cal. 2d 720, 87 p. 2d 1014 (1939); *Thornton v. Corcoran*, 407 F. 2d 695, 700 (D.C. Cir. 1969); Note, Requiring a Criminal Defendant to Submit to a Government Psychiatric Examination: An Invasion of the Privilege Against Self-Incrimination, 83 Harv. L. R. 648, 660-61 (1970).

The Commonwealth's second argument is for the adoption of an automatic waiver approach; that is, even assuming that a psychiatric examination involves an accused's being compelled to give self-incriminating testimonial evidence, a defendant must be held to waive his fifth amendment privilege when he pleads not guilty by reason of insanity because otherwise a fair state-individual balance will not be maintained. The Commonwealth grounds this argument on assertions that, without its own examination, the Commonwealth will have "no effective means of rebutting the insanity defense" and that our recent decision in *Commonwealth v. Vogel*, 440 Pa. 1, 268 A. 2d 89 (1970) "has placed a greater burden on the Commonwealth . . . by removing the presumption of sanity."

We find this argument unconvincing. We do not believe that the idea of an automatic waiver of a constitutional privilege is consistent with the principle that a waiver, to be effective, must be voluntary and must be an "intentional relinquishment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). It is difficult to understand how a waiver could be characterized as either voluntary or intentional if automatically triggered by a defendant's assertion of the defense of insanity. Such a characterization would do violence to the concept associated with *Johnson* of a free choice between anticipated benefits and detriments.

Nor can appellant gain support from those cases which hold that a defendant who takes the witness stand waives the privilege for purposes of cross-examination. See, e.g., *Brown v. United States,* 356 U.S. 148 (1958); *Fitzpatrick v. United States,* 178 U.S. 304 (1900). Both the language of the fifth amendment and the interests it protects weigh against an extension of the automatic waiver to out-of-court psychiatric examinations. As one commentator has said, "the language of the privilege—the accused shall not 'be compelled . . . to be a witness against himself'—implies that once a defendant becomes a 'witness', the privilege no longer applies." Harvard Note, supra, at 669. In addition, the protection afforded the defendant by the privilege is more important to him when he is questioned out-of-court where he is not safeguarded by the presence of procedural rules, the trial judge, and his attorney.

Furthermore, even if we did think that a state-individual balancing test were relevant to the issue of an automatic waiver, it is not at all clear that under our decisions in *Musto, Butler* and *Byrd* the Commonwealth would be left "no effective means of rebutting the insanity defense." There are generally two types of testimony a psychiatrist will give at trial: one as to the basic facts of an accused's behavior and the other as to the conclusions drawn from those facts. The Commonwealth's expert psychiatric witnesses could use whatever basic facts were used by defendant's psychiatrist in his testimony as forming the grounds for his opinion. The prosecution could also garner these facts from eyewitness testimony, including the personal observation of family, friends and co-workers.[3] The prose-

---

[3] The increased use of lay witness testimony might be advantageous both to the Commonwealth's case and to the truth-finding process. Such evidence may in some cases be more persuasive than that adduced through an expert witness. See *Mims v. United States,*

cution could rebut or undermine a defendant's psychiatrist's version of the basic facts by attacking his methods or by the testimony of lay witnesses. As to the conclusions to be drawn from the basic behavioral facts, the Commonwealth could, with the help of its psychiatrist, rebut by showing the incorrectness or inaccuracy of the expert's inferences from the basic facts or the unreliability of the theories of interpretation employed by him.

Finally, we do not accept the Commonwealth's contention that our decision in *Vogel* imposed any additional burden on the Commonwealth. The justices in the majority in *Vogel* relied on long-standing rules of evidence in holding that a verdict may not be based solely on a presumption where there is evidence which credibly contradicts the presumption. In *Vogel* the Commonwealth, not the defendant, sought to change the law.[4]

Accordingly, we reaffirm our prior rulings that the fifth amendment protects a defendant from being compelled to answer questions asked of him by the psychiatrist for the Commonwealth.

Order affirmed. Case remanded for further proceedings consistent herewith.

————

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Defendant is under indictment for murder. The lower Court authorized him to be examined by two psy-

---

375 F. 2d 135, 145 (5th Cir. 1967); Harvard Note, supra, footnotes 132 and 142. The increased use of such evidence would also help control the problem of the jury's over-reliance on often-conclusory psychiatric testimony. See *Rollerson v. United States*, 343 F. 2d 269, 271 (D.C. Cir. 1964) (BAZELON, J.).

[4] We also note that unlike the federal courts, see, e.g., *Albright*, supra, Pennsylvania has not adopted a rule placing the burden of proof on the insanity issue on the prosecution. See *Vogel*, supra, 440 Pa. at 11.

chiatrists, and thereafter defendant's counsel notified that Court that defendant would plead insanity. Our Court now decides that upon examination by the Commonwealth's psychiatrist in the presence of defendant's counsel, defendant does not have to answer any questions which would in any way tend to incriminate him, or indeed divulge any information whatsoever. This ruling makes it virtually impossible for the Commonwealth to rebut the testimony of defendant's psychiatrists, who were permitted to examine and question defendant about his feelings and absolutely anything else they desired—and hence makes it virtually impossible for the Commonwealth's psychiatrist or other expert witnesses to testify about defendant's sanity or insanity at the time he committed the murder.

The Supreme Court of the United States has pertinently held that a defendant who takes the witness stand waives his Fifth Amendment privilege against self-incrimination. *Brown v. United States*, 356 U.S. 148 (1958); *Fitzpatrick v. United States*, 178 U.S. 304. These cases are far stronger for the Commonwealth than the instant case and the issue involved herein, and the principles enunciated in *Brown* and *Fitzpatrick* undoubtedly control the instant case and require a reversal of the lower Court's decision.

I dissent from what I believe to be this very one-sided and very unfair and very unrealistic and very unjustifiable decision.