375 A.2d 360

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Victor DeFELICE, Jr.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1975.

Decided June 29, 1977.

the penal law and that his conduct was constitutionally sheltered from criminal sanctions.

518

Ralph B. D'Iorio, Assistant District Attorney, Media, for appellant.

David E. Auerbach, Media, submitted a brief for appellee.

Before WATKINS, P. J., and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

The Commonwealth has appealed the suppression by the lower court of appellee's out-of-court identifications and arrest.[1] Because the lower court did not suppress the appellee's confession, the fruits of the robbery or the complaining

1. The lower court's order granted appellant's petition " . . . to the extent that the identification and arrest are suppressed."

witnesses' in-court identifications, the Commonwealth has not been substantially handicapped in its ability to proceed to trial. Therefore, we quash this appeal.

During the morning of October 9, 1974, a lone gunman robbed a pharmacy in Haverford Township, Delaware County. At approximately 10:00 a. m., two Haverford Township police reported to the scene and secured a detailed description of the suspect. The police followed the suspect's reported route of escape and determined that he had entered a house at 100 Marthart Avenue. As the police talked to people standing outside the house, appellee came out and requested medical assistance for a cut hand.

The police noticed that appellee fit the description of the robber except for the fact that the suspect was supposed to have a beard while appellee had obviously recently shaved. The officers left appellee's residence and reported their findings to the Haverford Township Detective Bureau. Detective McNasby instructed the two officers to return to appellee's residence to bring appellee to the station for further questioning. McNasby also instructed the officers to try to get a positive identification of the appellee on their way back to the station.

The officers returned to appellee's residence a little before noon, knocked on the door, and requested to speak to appellee. When appellee came to the door, the officers told him they were investigating a robbery and requested that he agree to an identification by the eyewitnesses. The officers handcuffed appellee and drove to the pharmacy. As they alighted from the car, the pharmacy clerk immediately identified appellee as the robber. The police placed appellee under "formal" arrest, warned him of his right to remain silent, and drove him to the police station. At the police station, the police arranged a face-to-face confrontation between appellee and three other eyewitnesses. The police warned appellee of his *Miranda* rights again and then secured his signature on a consent form allowing them to search his apartment. The officers returned to appellee's residence and searched his room, but found no proceeds of

the robbery. After the officers secured signed consent forms for the search of the rest of the house from the other occupants, the officers found a variety of hypodermic needles, related drug paraphernalia, assorted pills and other items taken in the robbery, and a .38 caliber revolver loaded with hollow point bullets, in the attic of the house. The officers then returned to the police station.

Upon their return, the officers warned appellee of his right to remain silent; and appellee agreed to submit to questioning without an attorney present. At approximately 3:20 p. m., appellee gave a statement to the police in which he admitted that he committed the robbery.

Appellee filed a motion to suppress all of the physical evidence secured as the result of his allegedly unlawful arrest because it was secured without a warrant and by coercion. Appellee also sought to suppress the eyewitness identifications because they were secured in the absence of counsel and by means of impermissibly suggestive procedures. Finally, appellee contended that his confession was involuntary because he made it while going through withdrawal under promises of medical assistance if he cooperated. After a hearing on April 22, 1975, the lower court suppressed appellee's identification and "the arrest." The lower court did not clearly indicate that it would suppress the fruits of the search and seizure.[2] It did not hold a taint hearing to determine whether the appellant could still be identified in court by the eyewitnesses.[3] Fur-

---

2. It may be necessary for the Commonwealth to secure clarification of the scope of the lower court's order. It is clear that the lower court did not determine that the physical evidence was a fruit of the unlawful arrest. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The suppression of fruits of an unlawful arrest will not be ordered unless the lower court determines whether the fruits were " . . . come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 487–88, 83 S.Ct. at 417.

3. Assuming that the lower court correctly suppressed the out-of-court identification, the Commonwealth has not sought a determination of the issue of the admissibility of future in-court identifications. Their admissibility would depend on whether they derive from a

ther, it is clear that the lower court did not grant appellee's request that his allegedly involuntary confession be suppressed.[4]

It is a fundamental axiom of appellate court jurisdiction that an appeal will lie only from a definitive order, decree or judgment which finally terminates the action. *Commonwealth v. Ray,* 448 Pa. 307, 292 A.2d 410 (1972); *Middleberg v. Middleberg,* 427 Pa. 114, 233 A.2d 889 (1967); *Commonwealth v. Guardiani,* 226 Pa.Super. 435, 310 A.2d 422 (1973). Except for certain statutory exceptions,[5] not relevant to the instant case, this Court's jurisdiction is confined to appeals from final order of the courts of common pleas. The Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. III, § 302, 17 P.S. § 211.302 (Supp.1976). See *Commonwealth v. Rucco,* 229 Pa.Super. 247, 249–50, 324 A.2d 388, 389 (1974). It is also well settled that the parties may not stipulate to appellate jurisdiction in disregard of statutory procedures. *Commonwealth v. Yorktowne Paper Mills, Inc.,* 419 Pa. 363, 214 A.2d 203 (1965). And that jurisdiction may not be conferred through the approval of such agreements by the court. *Commonwealth v. Yorktowne Paper Mills, Inc.,* supra; *Fenerty Disbarment Case,* 356 Pa. 614, 52 A.2d 576, cert. denied, 332 U.S. 773, 68 S.Ct. 89, 92 L.Ed. 358 (1947).

The Appellate Court Jurisdiction Act has expanded the jurisdiction of the appellate courts of this Common-

source independent of the impermissibly suggestive identification procedures. *United States v. Wade,* 388 U.S. 218, 222, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 275, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

4. The lower court clearly omitted the confession from its limited suppression order. See note 1, supra.

5. For example, a court of common pleas may certify for appeal a controlling question of law as to which there is substantial ground for difference of opinion if its resolution will materially advance the termination of the case. Our Court may then, in its discretion, decide to take this appeal. Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. V, § 501; 17 P.S. § 211.501 (Supp. 1976). See also, *Colvin v. Somat Corporation,* 230 Pa.Super. 118, 326 A.2d 590 (1974).

wealth in one important respect: "The failure of an appellee to file an objection to the jurisdiction of an appellate court . . . shall, unless appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this act, or of any general rule adopted pursuant to section 505 of this act, vesting jurisdiction of such appeal in another appellate court." Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. V, § 503; 17 P.S. § 211.503(a) (Supp.1976). This section of the Appellate Court Jurisdiction Act vests this court with the discretionary power to hear an appeal if neither party objects to its jurisdiction, even though a statute confers jurisdiction on another court or would otherwise bar our hearing this appeal. See *Commonwealth v. Rucco,* supra. Nevertheless, our appellate courts have consistently held that the right of the Commonwealth to appeal from a pretrial suppression order is very strictly limited. *Commonwealth v. Ray,* supra; *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). The Commonwealth may only appeal from a pre-trial order if it involves a pure question of law and if it effectively terminates or substantially handicaps a prosecution. *Commonwealth v. Ray,* supra; *Commonwealth v. Pomponi,* 447 Pa. 154, 284 A.2d 708 (1971); *Commonwealth v. Taper,* 434 Pa. 71, 253 A.2d 90 (1971); *Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968); *Gaskins Case,* 430 Pa. 298, 244 A.2d 662 (1968); *Commonwealth v. Fisher,* 422 Pa. 134, 221 A.2d 115 (1966); *Commonwealth v. Bosurgi,* supra; *Commonwealth v. Barkley,* 234 Pa.Super. 503, 341 A.2d 192 (1975); *Commonwealth v. Kline,* 234 Pa.Super. 12, 335 A.2d 361 (1975); *Commonwealth v. Cosby,* 234 Pa.Super. 1, 335 A.2d 531 (1975); *Commonwealth v. Ferrone,* 218 Pa.Super. 330, 280 A.2d 415 (1971); *Commonwealth v. Hernley,* 216 Pa.Super. 177, 263 A.2d 904 (1970); *Commonwealth v. Smith,* 212 Pa.Super. 403, 244 A.2d 787 (1968); *Commonwealth v. Payton,* 212 Pa.Super. 254, 243 A.2d 202 (1968); *Commonwealth v. Evans,* 210 Pa.Super. 454, 233 A.2d 585 (1967).

In *Commonwealth v. Bosurgi,* supra, our Supreme Court held that the requisite finality is present in two limited situations: (a) if the order of suppression will result in a termination or conclusion of the prosecution because the Commonwealth has insufficient evidence to convict the accused or (b) if the order of suppression " . . . will result in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present *all* its available evidence." *Commonwealth v. Bosurgi,* supra, 411 Pa. at 63, 190 A.2d at 308. *Bosurgi* and subsequent cases which have permitted the Commonwealth to appeal pretrial suppression orders whenever such orders will "substantially handicap" the Commonwealth have justified such interlocutory appeals on the theory that the suppressed evidence may well mark the difference between success and failure in the prosecution. *Commonwealth v. Bosurgi,* supra; *Commonwealth v. Smith,* supra, 212 Pa.Super. at 405, 244 A.2d at 788. If the Commonwealth were forced to go to trial with the crucial evidence suppressed, the opportunity for appellate review would be foreclosed because it could never appeal from a verdict of acquittal. *Commonwealth v. Pomponi,* supra; *Commonwealth v. Bordner,* supra 432 Pa. at 421, 247 A.2d at 620 (Concurring Opinion by Roberts, J.).

When the Commonwealth appeals from a suppression order which does not either terminate the case or substantially handicap the prosecution, we must quash the appeal. In *Commonwealth v. Smith, supra,* the lower court suppressed several out-of-court statements made by an accused who was charged with indecent assault and assault and battery with intent to ravish. The Commonwealth sought to establish the admissibility of the accused's apology to the victim in order to corroborate her identification testimony. We found that the Commonwealth's case was virtually intact, despite the suppression order, and we quashed the appeal.

In *Commonwealth v. Kloch,* 221 Pa.Super. 324, 292 A.2d 479 (1972), the appellee was charged with driving an automobile while under the influence of intoxicating liquor.

State troopers found appellee asleep or unconscious, leaning against the front door of his car, which was stopped on the shoulder with the motor running and the lights on. When the trooper knocked on the window to awaken appellee, he opened the window; and the trooper noted the strong odor of alcohol on appellee's breath. Appellee had difficulty producing his vehicle identification and failed certain field sobriety tests. The trooper placed appellee under arrest and subsequently secured his agreement to undergo a blood alcohol test. The lower court suppressed the results of the blood alcohol test, and the Commonwealth appealed. This Court quashed the appeal because the Commonwealth had ample evidence to convict appellee of driving while intoxicated. See also, *Commonwealth v. Ferrone,* supra.

The instant case is clearly controlled by *Commonwealth v. Smith,* supra, and *Commonwealth v. Kloch.*[6] At trial, the Commonwealth can still introduce appellee's confession, possible in-court identifications by two eyewitnesses, and the fruits of the robbery. None of these items is

6. The dissent contends that the instant case is controlled by *Commonwealth v. Rose,* 211 Pa.Super. 295, 235 A.2d 462 (1967), and *Commonwealth v. Deren,* 233 Pa.Super. 373, 337 A.2d 600 (1975). In *Commonwealth v. Rose,* supra, the appellee was charged with possession of narcotics. The lower court suppressed all of the drugs taken from appellee's car. Despite the fact that the Commonwealth did not certify that it would be substantially handicapped, this Court determined that the case against the appellee would be terminated by the suppression order and allowed the appeal.

In *Commonwealth v. Deren,* supra, we determined that the absence of a certification by the Commonwealth that it would be substantially handicapped in the presentation of its case was not fatal to its right of appeal because we could make an independent determination that the suppressed evidence was essential to the Commonwealth's case.

Both *Rose* and *Deren* involve cases in which no motion to quash was filed and in which the Commonwealth failed to certify that it could not proceed without the evidence. *Rose* and *Deren* stand for the proposition that, if we can determine from a review of the evidence available to the Commonwealth that it will be substantially handicapped, we should not quash the appeal *sua sponte* simply because the Commonwealth has not provided the required certification. In the instant case, it is very clear that the Commonwealth could not make the necessary certification because the requisite finality is completely absent.

covered by the lower court's suppressicn order.[7]   The lower court's decision to suppress the out-of-court identifications does not so hamper the prosecution of appellee's case that the order has the requisite attributes of finality.  We, therefore, must quash the appeal.

Appeal quashed and case remanded for further proceedings.

PRICE, J., files a dissenting opinion in which JACOBS, J., joins.

VAN der VOORT, J., files a dissenting opinion in which JACOBS, J., joins.

PRICE, Judge, dissenting:

I agree with Judge Van der Voort's dissenting opinion and join it.   However, a further comment seems warranted.

In *Commonwealth v. Deren,* 233 Pa.Super. 373, 337 A.2d 600 (1975), the majority of this court examined in great detail the problems presented in this area.   Although the majority attempts to distinguish the *Deren* case (p. 524), in my opinion they have not successfully done so, and hence substantially have again handicapped the Commonwealth's right to secure meaningful review of a lower court's suppression order.   In so doing the majority engages in surprising guesswork and speculation that does damage to a system of criminal justice that must remain viable to protect not only individual rights of defendants, but also the public interest of the Commonwealth.

In the instant prosecution it should be obvious that the identification issue is the very heart of the Commonwealth's case, yet the majority concludes that "The lower court's

7.   In the instant case, the order of the lower court is less than clear. The burden is clearly on the Commonwealth to preserve its right of appeal by insuring the entry of an appropriate order.   *Commonwealth v. Ray,* supra 448 Pa. at 312, 292 A.2d at 413.

The Commonwealth may be able to secure a ruling on the scope of the lower court's order either by attempting to introduce any item of evidence not specifically covered by it or by petitioning the lower court for clarification of the order.

decision to suppress the out-of-court identifications does not so hamper the prosecution of appellee's case that the order has the requisite attributes of finality." (p. 524) My conclusion that identification is the critical issue in this case is, of course, also guesswork and speculation. At least I admit to the weakness while the majority does not.

In any event it was for this very problem that this court, at least in *Deren,* concluded that we must be willing to accept the Commonwealth's stated position that it *will* be substantially prejudiced by the suppression order. As we said in *Deren:*

"We interpret this to mean that any time the Commonwealth alleges that its case will be either terminated and concluded or substantially prejudiced by a suppression order, we must review the suppression order only on its merits. Stated another way, when the District Attorney from one of the counties of this Commonwealth directs an appeal from the suppression of evidence, we must accept such an appeal as the Commonwealth's good faith certification that the case will be terminated or substantially prejudiced by such an order, and determine only if the suppression was proper.

To apply any other test could *permanently* exclude evidence even if it was improperly suppressed. Such a result is contrary to our function in this matter, which is to ascertain that all evidence received is proper and to insure that the rights of parties are protected. The District Attorney, representing the people of this Commonwealth, and he alone, has the right and duty to present the Commonwealth's case with all the legally available evidence that he, in his judgment, believes to be substantially necessary to the case.

In the case of *Commonwealth v. Rose,* 211 Pa.Super. 295, 235 A.2d 462 (1967), the Commonwealth appealed a suppression order and Judge Jacobs, writing for the majority, stated: '[s]ince appellee has not filed a motion to quash, we will assume that the suppression order will substantially handicap the Commonwealth and hear the

appeal.' 211 Pa.Super. at 296, 235 A.2d at 463. When we are correctly willing to *assume* substantial prejudice we must also be willing to accept the Commonwealth's stated position that it *will be* substantially prejudiced by the suppression order." 233 Pa.Super. at 377–78, 337 A.2d at 602.

I strongly dissent from the majority's quashing of this appeal and on the merits of the questions presented would reverse and remand for trial.

JACOBS, J., joins in this dissenting opinion.

VAN der VOORT, Judge, dissenting:

A majority of our Court has decided to quash the Commonwealth's appeal of an order suppressing evidence. The rationale of the majority is that the suppression of an on-the-scene identification made by a victim within two hours of a robbery will not substantially handicap the Commonwealth's prosecution of the case, in light of the remaining evidence. I respectfully dissent.

In *Commonwealth v. Rose,* 211 Pa.Super. 295, 296, 235 A.2d 462, 463 (1967), our Court stated: "Since appellee has not filed a motion to quash, we will *assume* that the suppression order will substantially handicap the Commonwealth and hear the appeal." (Emphasis added). In *Commonwealth v. Deren,* 233 Pa.Super. 373, 377–78, 337 A.2d 600, 602 (1975), our Court reiterated this position: "[W]hen the District Attorney from one of the counties of this Commonwealth directs an appeal from the suppression of evidence, we must accept such an appeal as the Commonwealth's good faith certification that the case will be terminated or substantially prejudiced by such an order, and determine only if the suppression was proper." In the case before us, *no motion to quash the appeal was filed.* By quashing this appeal without even giving the Commonwealth an opportunity to show how it may be substantially handicapped by the suppression order, we are doing the Commonwealth a disservice. We have led the Commonwealth to believe that we will automatically entertain appeals from orders suppressing

evidence (provided that no petition to quash the appeal has been filed), and then quashed this appeal in the Commonwealth's face.

Turning to the merits of this case, I would find that the lower court erred in granting the suppression motion. The facts of the case are as follows:

At approximately 10:00 the morning of October 9, 1974, the Havertown Pharmacy was robbed. The robber was described for the police as a bushy-haired white male with a mustache and about a week's beard growth, approximately twenty-two years old, approximately one hundred forty pounds, wearing a blue plaid shirt and blue jeans. Police officers following the robber's escape route came upon a blue plaid shirt near a fence, and eventually ascertained that a person matching the robber's description had entered a house located at 100 Marthart Street. The police knocked on the door of this house, but received no answer. They left, but returned at approximately 11:30 A.M., at which time they came across a number of people smoking marijuana in a car parked in front of the house. While the police were in the process of arresting these people, appellee Victor DeFelice came out of the house and asked the police for first aid assistance for cuts which he had received in the palms of both hands. The police noticed that appellee matched the description of the drugstore robber, with the exception of the shirt and the beard. They also noticed that appellee had fresh cuts on his face, as if he had just shaved. The police again left, called a detective at the police station for advice, and were told to return to 100 Marthart Street and ask appellee if he would accompany them to the drugstore. The police returned to the house, explained the situation to appellee, and asked if he would accompany them. Appellee agreed to go, provided it didn't take too long, since he had "nothing to hide." At the drugstore, a female clerk positively identified appellee as the robber; appellee was informed of his rights and was formally arrested. On the way to the police station, a stop was made near the fence where the blue shirt had earlier been discovered, and appellee's shoe

was compared with a footprint on the opposite side of the fence. The result of the comparison was inconclusive.

At the police station, appellee was sitting in the Youth Aid Office near the Detective Bureau, when the owner of the drugstore walked past, spotted appellee, and identified him as the robber. Appellee was again informed of his rights, was questioned about the robbery, and was then taken back to the house at 100 Marthart Street. At the house (in which three persons in addition to appellee resided), the police found various articles connected with the robbery: ten bottles of narcotics, a large plastic bag of pills, a bottle of pills with a Havertown Pharmacy label, and a .38 revolver loaded with hollow-point bullets. None of these articles were found in appellee's room. The search was conducted with the consent of appellee and the other occupants of the house. Subsequent to this search, appellee was again questioned at the police station, and signed a five-page incriminating statement. Appellee was formally arraigned between 5:30 and 6:00 that evening, charged with robbery, theft by unlawful taking or disposition, theft by receiving stolen property, possession of a firearm without a license, and with narcotics violations. Appellee filed a petition on April 8, 1975 to suppress all evidence obtained in connection with the allegedly-illegal confrontations and arrest, which petition was granted by the lower court ("to the extent that the identification and arrest are suppressed") by Order dated April 22, 1975. Appeal was taken to our court by the Commonwealth from this Order suppressing these portions of the evidence.

Although the lower court found that appellee had been informed of the crime and the possible charges and had voluntarily accompanied the police to the drugstore, the court ruled that the police acted improperly in taking appellee to the drugstore rather than to the police station for a line-up. The court accordingly suppressed the identification and the subsequent arrest. I believe that the police were justified in this case in taking appellee to the scene of the robbery, and that the lower court erred in granting the petition to suppress.

In *Commonwealth v. Ray,* 455 Pa. 43, 315 A.2d 634 (1974), within a short time of a robbery, police stopped a speeding automobile and observed that one of the passengers matched the description of the robber. The police held the suspect in a parking lot until the victim of the robbery arrived and identified the suspect as the robber. The identification was made approximately fifty minutes after the commission of the crime. The suspect was convicted and, relying on *United States v. Wade,* 338 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), argued on appeal that the identification was constitutionally infirm because he had not been informed of his right to have counsel present at the confrontation, and because he had not been afforded a formal line-up. Our Supreme Court held in *Ray* that adversary judicial proceedings did not commence with the pre-arrest confrontation of a suspect who had been detained for investigation shortly after the commission of a crime, and that the defendant accordingly had no right to have counsel present or to have the confrontation postponed until a formal line-up could be held.

In *Commonwealth v. Turner,* 454 Pa. 520, 314 A.2d 496 (1974), our Supreme Court dealt with the issue of an allegedly suggestive and prejudicial confrontation, in an essentially similar fact situation. In *Turner,* a robbery suspect was apprehended and was taken by the police in a patrol car to be confronted by the victim. The confrontation occurred within fifteen minutes of the crime. The suspect was identified and was subsequently convicted of the crime, and on appeal argued that the identification had been overly suggestive and a denial of his due process rights. While recognizing that *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) required the suppression of identification testimony if the pre-trial confrontation was so infected by suggestiveness as to give rise to irreparable likelihood of misidentification, the court in *Turner* stated that a prompt on-the-scene confrontation did not, "absent some special elements of unfairness," violate due process. In so finding,

the court noted that close proximity in time and place greatly reduced the chance of misidentification. The court also recognized the importance of the rapid release of innocent suspects and the quick resumption by the police of their search for the guilty parties.

Although the time between commission of the crime and the identification of the perpetrator was greater in the case before us (just under two hours) than in either *Ray* (fifty minutes) or *Turner* (fifteen minutes), I believe that the identification of appellee was made while the police were still in the early stage of their investigative work, and was made quickly enough after the crime to outweigh any suggestiveness in the viewing. Neither appellee's *Wade* nor *Stovall* rights were violated by the actions of the police in this case.

Accepting the finding of the lower court that appellee voluntarily accompanied the police to the drugstore, and having found that appellee's *Wade* and *Stovall* due process rights were not violated by the confrontation at the drugstore, it is necessary to address the question of whether appellee was illegally arrested. Whether or not an arrest is constitutionally valid depends upon whether at the moment the arrest is made the arresting police officers have probable cause to make the arrest—whether at the time of the arrest the facts and circumstances within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Murray,* 437 Pa. 326, 329, 263 A.2d 886 (1970); *Commonwealth v. Tookes,* 236 Pa.Super. 386, 388, 344 A.2d 576 (1975). In the case before us, a suspect who voluntarily accompanied police officers to the scene of a robbery was identified as the robber by one of the victims. After this identification, the police were in possession of information which would lead reasonable persons to conclude that appellee had committed a robbery—probable cause then existed for an arrest. See

532

*Commonwealth v. Hall,* 456 Pa. 243, 317 A.2d 891 (1974). I would find that the identification at the drugstore was not made in violation of appellee's *Wade* and *Stovall* rights, that the police did have probable cause to arrest appellee, and that the lower court erred in suppressing the evidence. Since I read the lower court's Order as suppressing only the identification at the drugstore (the lower court was somewhat less than clear on what it meant by suppressing "the arrest"), the issue of the admissibility of (1) the identification made during the accidental confrontation at the police station, (2) the inculpatory written statement, and (3) the items seized from the house in which appellee resided, would not be before us at this time.

I dissent from the majority's disposition. The Order of the lower court dated April 22, 1975 should be reversed, and the case should be remanded with a procedendo.

JACOBS, J., joins in this dissenting opinion.