In the Matter of SANDY LAKE TRANSFER INC., Debtor.

Warren R. KECK, III, Esq., Trustee, Plaintiff,

v.

NATIONAL FARMERS ORGANIZATION, Falconer Realty Corporation, Defendants.

Bankruptcy No. 82–00630. Adv. No. 83–0228.

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 6, 1984.

Warren R. Keck III and Voorhies, Rowley, Wallace, Keck & Frampton, Greenville, Pa., pro se.

Herman M. Rodgers and Rodgers, Perfilio, Heiman & Sewinsky, P.C., Sharon, Pa., Marvin Beshore and Beshore & Bickley, Harrisburg, Pa., for defendant, National Farmers Organization.

William F. Duncanson and Lodestro & Bailey, Jamestown, N.Y. and Donald J. Rogala, Erie, Pa., for defendant, Falconer Realty Corp.

David K. Rudov and Rudov & Stein, Pittsburgh, Pa., for debtor.

## MEMORANDUM AND ORDER ON TRUSTEE'S SUIT FOR TURNOVER OF MILK HANDLING AND PROCESSING EQUIPMENT

WM. B. WASHABAUGH, Bankruptcy Judge:

At issue in the within action for turnover of the Trustee of Sandy Lake Transfer, Inc., (hereinafter called debtor) against the National Farmers Organization, (NFO), et al, is the title to and right to possession of certain milk handling and processing equipment in the possession of NFO and/or their proceeds of sale.

The debtor was incorporated August 31, 1972 for the purpose of holding title to equipment and facilities to be used by the defendant, NFO, in marketing milk for a

group of milk producers in NFO's Pittsburgh marketing area then comprised of 31 counties in western Pennsylvania, 17 in eastern Ohio and 3 in western New York. It is agreed that the laboratory equipment listed on plaintiff's Exhibit No. 2 which it then owned belongs to the plaintiff-trustee, but in dispute is whether the milk handling and processing equipment listed on Schedule "A" to the plaintiff's complaint purchased by the debtor from the Crisci Food Equipment Company under a lease agreement dated September 15, 1975 at plaintiff's Exhibit 1 providing for payment of the purchase price of $196,171.20 by a downpayment of $2,740.00 and 71 monthly installments of the same amount beginning September 15, 1975 and a final payment of $100.00 on August 15, 1981 is its property or that of the defendant, NFO, which made the final payment of $100.00 with its own funds and the down payments and the $2,740.00 monthly installments through deductions from the sale proceeds of the milk delivered to it by the producers before computing and forwarding the net sums due the producers therefor in pursuance of the agreements of the parties as hereinafter explained.

NFO located markets for the milk delivered to its reload station by the producers, complied with testing regulations of the United States Department of Agriculture, negotiated prices for sales of the milk and made delivery thereof by truckload in tanks mounted on or built into trucks apparently furnished by the debtor, and after allocating and deducting its costs and expenses including the lease-purchase payments from the amounts realized from the shares of the respective producers, remitted them the share of the net proceeds of sale to which each was entitled, all in accordance with the agreements between it and said producers at defendant's Exhibits 3 and 4 who were members of the NFO in the Pittsburgh marketing area and simultaneously incorporators of and members or stockholders in the now bankrupt debtor-corporation (NFO performed similar services under identical arrangements and agreements with milk producers in other districts and marketing areas throughout the entire United States).

The witnesses agree, including the operating officers and employees of NFO from both its national and local headquarters, that it was NFO's uniform policy not to take title to or ownership of the equipment and facilities it used on behalf of local milk producers to perform its functions in the various marketing areas, and that it was for the purpose of holding title to such equipment in the Pittsburgh marketing area that the debtor-corporation, Sandy Lake Transfer, Inc., was formed in 1972. They also agree that although the debtor was incorporated in the name of Sandy Lake Transfer, Inc., said debtor was uniformly known as Sandy Lake Reload because of the necessity of having deliveries of their milk made by the milk producers to the central reload station operated by NFO for sale and redelivery to the purchasers of said milk on their behalf, and further, that the debtor, Sandy Lake Transfer, Inc., that purchased the milk processing and handling equipment here at issue listed on Schedule "A" to plaintiff's complaint is one and the same entity as the Sandy Lake Reload Corporation listed as the purchaser-lessee of said equipment under said lease agreement, plaintiff's Exhibit 1, September 15, 1975; that it has undisputed title to the laboratory equipment at plaintiff's Exhibit No. 2 it previously acquired after its incorporation in 1972 for the purpose of holding to such equipment and that said entity was incorporated in the name of Sandy Lake Transfer, Inc. August 31, 1972 instead of Sandy Lake Reload Corporation by which it was known, and that the debtor's Articles of Incorporation recite its principle purposes as that of

"(owning, leasing, or controlling) land and facilities through which members of the National Farmers Association may market their milk .... and to lease, maintain, establish such facilities as a collection point for carrying out such purposes" (Articles of Incorporation at plaintiff's Exhibit 3);

and finally, that plaintiff's debtor is indisputably one and the same entity as the purchaser of the equipment under the Lease Agreement at plaintiff's Exhibit 1 in 1975 and the owner of the previously acquired equipment listed in Exhibit No. 2 incorporated as Sandy Lake Transfer, Inc. instead of Sandy Lake Reload by which it was commonly known.

The lease or purchase price of the equipment listed on schedule "A" to the complaint was paid for in the installments called for under the lease-purchase agreement by August 15, 1981 through payments of NFO from receipts from the sales of the milk which it distributed to the milk producers: after deducting said lease payments and its other expenses from the gross proceeds of sale it allocated and distributed the net proceeds to said producers (the final payment of $100.00 it appears to have made from its own funds).

Before moving the seat of its Pittsburgh marketing area operations from Sandy Lake to Falconer, New York because of increases in the volume of milk produced and sold in the latter vicinity in most years subsequent to 1975, it was decided by NFO that it was unwilling to take title to the additional equipment needed for the increased operations and also, after investigation, that the milk producers in the Falconer, New York vicinity were also unwilling to take title thereto. In addition, that neither NFO nor the producers in the Falconer vicinity would take the responsibility of arranging the financing and guaranteeing payment of the purchase price required by the seller, and that the only group or entity willing to purchase and take title to the equipment and guarantee its payment were the producers in the Sandy Lake vicinity through the debtor-corporation, Sandy Lake Transfer, Inc., also known as Sandy Lake Reload.

NFO introduced reports of receipts and utilization at defendant's Exhibit No. 2 to show that in the years 1977, 1978, and 1979 the number of pounds of milk it serviced increased more in the Falconer, New York vicinity more than in the Sandy Lake area,

and as stated, various witnesses testified to that effect. It appears to have made a slight deviation from its usual practices by leasing a building in that vicinity from the co-defendant, Falconer Realty Corporation, under the lease introduced in evidence as defendant's Exhibit No. 5 as headquarters for its operation in the new location. Falconer Realty is not claiming title to or disputing title to or ownership of the milk handling and producing equipment here at issue or the laboratory equipment the debtor admittedly still owns and was joined as a co-defendant in the event it should claim any of it as being fixtures attached to its building which is not the case.

As stated, NFO adhered steadfastly to its policy of refusing to take title to the subject equipment by requiring the debtor-corporation to enter into the lease-purchase agreement, plaintiff's Exhibit No. 1, before moving its reload station from the Sandy Lake to the Falconer, New York, area, and also required the Sandy Lake area producers to arrange financing of the purchase price through a bank in New Castle, Pennsylvania not far from the original Sandy Lake location, and to negotiate said guaranteed financing arrangements on the strength of financial statements of the individual milk producers in the Sandy Lake area.

Some of the witnesses testified that although it was the policy of NFO not to purchase or take title to processing and handling equipment, there was nothing in any of the agreements and papers introduced in evidence which prohibited it from so doing, but no instances of its making exception to the policy described was testified to with the possible exception of its leasing of the new location in the Falconer area from the co-defendant, Falconer Realty Corporation.

For no reason described in the testimony, and without making any effort to amend or alter the lease agreement between Crisci Food Equipment Company and Sandy Lake Transfer, Inc. sub numine Sandy Lake Reload Corporation (plaintiff's Exhibit 1), or making or negotiating any other changes in

the arrangements, NFO made the final payment of $100.00 provided for in the lease August 15, 1981 and obtained the receipted invoice therefor from the seller dated July 7, 1982 (defendant's Exhibit No. 1) it refers to as a bill of sale in it's brief. It asserts it acquired title to the valuable equipment here involved because of said final payment and takes the position that it thereby acquired title to said equipment and because the debtor has no documents of title thereto except the lease purchase agreement plaintiff's Exhibit No. 1 and is not in possession thereof it has the burden of proving NFO acquired its asserted title through a fraudulent transfer thereof which the plaintiff did not meet.

It is not set forth in the pleadings or testimony whether the defendant, NFO, asserts title to the subject equipment because of its "bill of sale" in its own behalf, or on behalf of the individual milk producers from whose shares in the sale proceeds of the milk it marketed on their behalf it deducted the lease payments and other expenses, or who or from what location said producers are or in what proportions it claims ownership on their behalf. The debtor-corporation was organized for the purpose of purchasing and acquiring title to the equipment at NFO's insistence, and it did so under the lease agreement, plaintiff's Exhibit No. 1; and it is apparent from the proofs of claim on file in its bankruptcy proceeding for taxes and unpaid purchase money deficiencies for trucks and tanks the sellers whereof repossessed on default to which counsel agree we may refer even though not introduced in evidence, the repossessed trucks and tanks are the same tank trucks in which NFO made the required deliveries of milk to its purchasers, and that the creditor-claimants are unpaid sellers of the equipment who will not be paid the cost thereof if either NFO in its own right or as a defacto trustee for the milk producers individually can assert title to the equipment the debtor was required to purchase under NFO's policies, and have the assets it was required by NFO's policies to buy withdrawn from the bankruptcy proceeding without payment of said indebt-

ednesses and purchase money claims presumptively contracted under the justifiable assumption the debtor acquired valid title thereto.

It is not disputed that the amount of milk produced in the Falconer, New York area increased over the years, and that the milk marketed at the reload station at Falconer came entirely from producers in that area after October of 1980 although substantial amounts came from the Sandy Lake producers until that time (3,000,000 pounds as against 2,000,000 from Falconer in 1979), but the installment payments for the involved equipment were deducted from checks due the producers from their current milk deliveries who were getting the benefit at any given time of the deductions and simultaneous assistance from the assets owned by the debtor-corporation: NFO's deductions from the gross proceeds of its sales of milk for its services and its advances for installments of purchase money, rent and all other expenses before arriving at the net sums due the milk producers for their milk provided full compensation and reimbursement for the contributions of NFO, and the remittances of the net sale proceeds to the milk producers from both areas for their deliveries of milk provided for all other expenses and entitlements from the operation except those of the unpaid suppliers of tanks, trucks and the priority tax obligations of the debtor-corporation as evidenced by the above referred to proofs of claim.

If the suppliers of the equipment in which NFO made deliveries of the producers' milk, and other creditors of the bankrupt corporation for unpaid expenses of its operations are required to suffer a withdrawal of its assets for distributions to NFO or individual milk producers without first being made whole, a fraud will be perpetrated upon said creditors through the aegis of the Bankruptcy Court and the property rights of the debtor in its equipment and assets it held title to which were paid for under the agreements and understandings between the milk producers and NFO would be nullified and scrapped.

No claim is before the Court on behalf of the Falconer milk producers individually, or those of the Sandy Lake area who produced a major portion of the marketed milk when the debtor was formed in 1972 and thereafter until several years after the reload station was moved to Falconer, New York, in 1975, and until the years 1979 and 1980, one year before the final lease payment was made in 1981 (possibly July 7, 1982, the date of the receipt of $100.00 on the invoice at defendant's Exhibit 1).

No claims for a share in the purchased equipment have been filed by any individual milk producers or group thereof, and it appears there would be no funds available for distribution to said producers or to the debtor's stockholders or incorporators after payment of the claims for tax and unpaid purchase money obligations of the debtor's suppliers and the costs of the proceeding. While this denouement is not the sole reason we are required to conclude that Sandy Lake Transfer, Inc. became the legal owner of the assets it purchased under the lease-purchase agreement at plaintiff's Exhibit No. 1 in accordance with the purpose for which it incorporated under its Articles of Incorporation at plaintiff's Exhibit No. 3 because the law also requires us to reach that conclusion under the foregoing analyses, it does illustrate and graphically exemplify the equities of the situation we are called upon to adjudicate as a Court of Equity in this proceeding.

IT IS ORDERED, ADJUDGED and DE-CREED for the foregoing reasons, that the milk handling and processing equipment listed on Schedule "A" to the complaint and the laboratory equipment on plaintiff's Exhibit No. 2 together with the proceeds of sale thereof are legally and equitably the property and assets of the plaintiff's debtor-corporation, and are distributable to the proper claimants and creditors of said debtor in this proceeding after payment of the costs of said proceeding; and that the defendant, the National Farmers Organization, shall surrender and turn over possession of the described assets and all records and information relating to negotiations for their sale to the plaintiff-trustee in bankruptcy for administration in the within case.