In the Matter of SANDY LAKE TRANSFER, INC., Debtor.

Warren R. KECK, III, Trustee, Plaintiff,

v.

NATIONAL FARMERS ORGANIZATION, Falconer Realty Corporation, Defendants.

Bankruptcy No. 82–00630.
Adv. No. 85–0043.

United States Bankruptcy Court, W.D. Pennsylvania.

May 20, 1985.

Warren R. Keck and Voorhies, Rowley, Wallace, Keck & Frampton, Greenville, Pa., pro se, for trustee.

Marvin Beshore, Harrisburg, Pa., and Herman M. Rodgers, and Rodgers, Perfillio, Heiman & Sewinsky, P.C., Sharon, Pa., for Nat. Farmers Organization.

## SUPPLEMENTAL OPINION

WM. B. WASHABAUGH, Bankruptcy Judge:

There is transmitted herewith the proceedings taken on a motion for private sale of the milk handling equipment which was the subject matter of an adversary proceeding and a subsequently filed petition of the trustee to sell it under an alternative offer. The undersigned had previously filed a Memorandum and Order dated December 6, 1984 granting the prayer of the Complaint of the trustee in bankruptcy to recover property consisting of said milk handling equipment from the National Farmers Organization (NFO) which Memorandum and Order held the movant, the debtor's trustee, had title to the property and directed the defendant, NFO, to turn the same over to the trustee, 44 B.R. 889. NFO filed an appeal from this Order December 14, 1984 which is before your Honorable Court, and not withstanding this state of the record the foregoing proceedings were filed asking the proceeds of sale to be held in escrow and distributed in accordance with the determination of your Honorable Court on the appeal.

The original equipment had been purchased with funds of the Sandy Lake Transfer, Inc. from proceeds of sale of milk of the milk producers who were members of NFO for whom NFO had acted as sales agent and, after paying its expenses and commissions as well as the rental payments due for the milk handling equipment under a long-term lease purchase agreement in the total sum of $196,000 remitted the balance to the farmer milk producers for whom it had marketed the milk in the proportions to which they were entitled.

The undersigned was skeptical as to whether the sum of $22,700 under NFO's motion was an adequate sum for the equipment purchased at a cost of $196,000, and whether an outside third party like NFO rather than the trustee in bankruptcy was a proper party to institute a proceeding for its sale, but was assured by the trustee that in his opinion the price was adequate in view of the present condition of the equipment and filed a Petition for its sale to Crisci Food Equipment Company, the original seller of the equipment which offer of repurchase was for the sum of $20,000. Because the second offer was not subject to deduction of any seller's commission and NFO's was subject to a 15% commission for arranging the sale, the trustee and the undersigned determined the $20,000 offer was the highest and the best of the two offers and a hearing thereon was scheduled to be held May 10, 1985.

The headquarters of Sandy Lake Transfer, Inc. were originally in Sandy Lake, Mercer County, Pennsylvania, but had been removed to Falconer, New York because during the years more of the producers of the marketed milk had their farms in the Jamestown-Falconer area. It was represented that the NFO wanted to abandon the headquarters at Falconer and

remove the equipment and that its lease expired May 10, 1985, and because of the emergencies of the situation and the fact that he had become hospitalized with a minor heart ailment, the undersigned scheduled a hearing on the trustee's petition for sale transferred from the United States Courthouse at Erie to the Hamot Hospital May 10, 1985 without adverting to the fundamental and elemental principles of the law of bankruptcy that the jurisdiction of the Bankruptcy Court to make any orders or decrees affecting the subject matter of an action before it terminates on an appeal being taken to the District Court from its Order: 28 U.S.C. § 158 construed in *In Re Excavation Construction, Inc.*, 8 B.R. 752, 760 (D.Md.1981) which followed *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862 (9th Cir.1976) cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976) and the additional proposition of horn-booklaw that where subject matter jurisdiction is lacking in the Bankruptcy Court, the parties cannot confer such jurisdiction by stipulation or consent: *City of Philadelphia v. Wm. Penn Business Institute*, 423 Pa. 490, 223 A.2d 850, 851 (1966); *Commonwealth of Pennsylvania v. De-Felice*, 248 Pa.Super. 516, 375 A.2d 360, 363 (1977), and a myriad of federal district and bankruptcy court decisions with which the undersigned is familiar but is unable to put his finger on because of his present hospitalization.

The undersigned was somewhat skeptical as to whether either of the purchase offers were in the best interest of the bankruptcy estate not only because of the seemingly inadequate amounts thereof in comparison to the $196,000 purchase price, but also because the parties desired to stipulate that title to an unstated quantity of equipment in the Sandy Lake headquarters at Falconer had been purchased since the decision of the Bankruptcy Court December 6, 1984 by the NFO should be determined at a hearing to be held at a later time to ascertain the proportion of the subsequently purchased equipment was the property of NFO and not subject to the litigation. The undersigned could not get clear cut answers to

questions to counsel as to whether any later acquired equipment had not been paid for from the proceeds of the milk sales by NFO and reduced from the net amounts remitted to the producers after payment of all of the other expenses, rental obligations, purchase installments, commissions and all other obligations of whatsoever kind of the NFO in respect thereto as the equipment previously acquired had been paid for, with the result that the title to the so-called additional equipment would be subject to the same issues of ownership as the earlier acquired equipment which we determined in our above referred to memorandum was in the debtor, Sandy Lake Transfer, Inc., which had been incorporated for the very purpose of holding title to equipment acquired in NFO's operation both before and after the date of said order: in short, that if the prior opinion of the undersigned is correct, the said additional equipment would be property of the bankrupt just as was the equipment originally acquired.

Because all of the parties were anxious to have the equipment disposed of so NFO could move the site of its operations to another location free and clear of additional rental obligations for its former headquarters, the lease whereof was to expire May 10, 1985 and because the trustee stated the amounts of the offers were adequate for the property in its present condition, the undersigned proceeded with the sale hearing at the hospital (in spite of his doubts of the propriety of NFO unilaterally terminating the lease and the arrangements with Sandy Lake Transfer, Inc.) at which no higher bids were received to the offer of Jack B. Qutermous in the modified sum of $21,500.

■ That evening the undersigned adverted to the existence of the principles of law above stated that he had no jurisdiction or authority to make an Order confirming the sale of the subject matter of the litigation and phoned counsel for the parties to that effect.

It is suggested for the convenience of the Court, that the Court could withdraw the reference of the proceeding from the undersigned and proceed to sell the property itself, remand it to the undersigned retroactively in such manner that the present sale could be confirmed, or remand it to the undersigned to instruct the trustee to obtain new offers of purchase and file proceedings to consummate the same anew, as the Court may desire and apologizes abjectly for not adverting to the legal realities of the situation in the first instance as he has to counsel for the parties notwithstanding their failure to ask the District Court to remand the proceeding to him or to call the matter to his attention.

Submitted herewith for the Court's consideration are the motion for sale of the National Farmers Organization for $22,700 subject to a 15% commission and later determination of the title to after acquired property and the proportion of the sale proceeds applicable thereto, and the petition of the trustee to sell the milk delivery equipment to Crisci Food Equipment Company for the sum of $20,000. The creditors were duly notified of the sale hearing prior to May 10, 1985 which was also duly advertised in the Mercer County Law Journal and a newspaper of general circulation in Mercer County which will be submitted upon request.