Edward McNEILL

v.

Thomas A. FULCOMER, et al.

Civ. A. No. 89–5732.

United States District Court,
E.D. Pennsylvania.

June 15, 1990.

Elizabeth J. Chambers, Philadelphia, Pa., for Philadelphia District Attorney's Office.

Edward McNeill, pro se.

## ORDER

McGLYNN, District Judge.

AND NOW, this 15th day of June, 1990, upon careful and independent consideration of the petition for writ of habeas corpus, and after review of the Report and Recommendation of United States Magistrate Peter B. Scuderi, IT IS ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The petition for a writ of habeas corpus is DENIED.

3. There is *no* probable cause for appeal.

## REPORT AND RECOMMENDATION

. PETER B. SCUDERI, United States Magistrate.

This is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by an individual presently confined at the State Correctional Institute at Huntington, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

FACTS AND PROCEDURAL HISTORY:

Petitioner was found guilty by a jury on November 7, 1980, of murder in the first degree, attempted murder, aggravated assault and battery and possession of an instrument of crime. He was sentenced to life imprisonment and lesser concurrent prison terms on March 24, 1981, by the Honorable Juanita Kidd Stout, then of the Court of Common Pleas of Philadelphia County.[1] The Pennsylvania Superior Court affirmed McNeill's sentence on direct appeal. *Commonwealth v. McNeill*, 321 Pa. Super. 564, 468 A.2d 824 (1983). The Pennsylvania Supreme Court denied discretionary review on March 7, 1984. *Commonwealth v. McNeill*, No. 709 E.D. Allocatur Docket 1983.

McNeill then filed under Pennsylvania's Post Conviction Hearing Act (PCHA), 42 Pa.Cons.Stat.Ann. § 9541 *et seq.* (Purdon 1982) (now superseded). On May 10, 1988, after an evidentiary hearing, the Honorable Joseph D. O'Keefe, of the Philadelphia Court of Common Pleas, denied the petition.

The Pennsylvania Superior Court affirmed the PCHA order on December 6, 1988. *Commonwealth v. McNeill*, 386 Pa. Super. 650, 555 A.2d 941 (Pa.Super.1988).

---

1. Justice Stout was subsequently elected to the Pennsylvania Supreme Court and is now re-

tired.

Allocatur to the Pennsylvania Supreme Court was denied on May 2, 1989. *Commonwealth v. McNeill*, 524 Pa. 605, 569 A.2d 1365.

In his federal habeas corpus petition, filed on August 4, 1989, petitioner claims his trial counsel rendered ineffective assistance by failing to tell him that he had a right not to talk to the prosecution's psychiatrist who later testified at his criminal trial.[2] Since this claim was brought to the state's highest court on appeal of petitioner's PCHA denial, it is exhausted for purposes of 28 U.S.C. § 2254(b).

DISCUSSION

On the morning of January 16, 1980, petitioner's wife told him that she wanted a divorce. Mrs. McNeill saw a lawyer that afternoon about the divorce. When she returned home with the youngest of their two children, she found McNeill, a seasoned hunter, just inside the front door and holding a shotgun. He fired twice at his wife but she hid behind a parked car with the boy and was not hit. (N.T. 167–170, 179–180).

Police were called to the scene and arrived shortly after 4:55 P.M. Among them was Officer William Washington. Petitioner resumed shooting, this time from a second-story window in his house. It was at this time that he shot Officer Washington, killing him. (N.T. 17, 32–38, 384–389). McNeill remained barricaded in the house, surrendering at 6:30 P.M.

After receiving and waiving *Miranda* warnings, McNeill confessed to shooting Officer Washington and to attempting to kill his wife. (N.T. 10/30/80, 303–312). His statement, along with transcribed tape recordings of his conversations with the police while he was barricaded in the house, were held admissible at trial after a long suppression hearing. (N.T. 6/13/80, 41, 48).

In his statement to Detective Michael Chitwood, McNeill said:

> Look, I had no intention of killing that cop. It's all that bitch's fault.... When she came home I just wanted to kill her. She had the baby. I seen her at the door. I ran outside and shot at her, but she ran behind a car across the street. Then I went upstairs and the cops came. I knew they would. So I figured I'll shoot them before they shoot me. I opened up on the cops from my bedroom window. Then I got scared. That's why I barricaded myself in the house.

(N.T. 10/30/80 at 312). This statement was made between 8:00 PM and 8:30 PM on January 16, 1980, less than four hours after the shooting. (N.T. 10/30/80, 312–315).

On March 18, 1980, defense counsel filed a Notice of Insanity Defense Pursuant to Rule 305(C)(1)(b).[3] On October 20, 1980, the court ordered a pretrial psychiatric examination of petitioner to determine his competency to stand trial.

At trial, McNeill did not take the stand or offer testimony in denial, and at no time

---

**2.** McNeill specifically claims "[n]either my lawyers, the prosecution, or the trial court ever told me that I had a right not to talk to the commonwealth's [sic] doctor who later testified against me at trial." Petition For Writ of Habeas Corpus at 12(A), p. 5. As all of McNeill's petitions to the state courts have asserted only an ineffective assistance of trial counsel claim for failure to preserve his Fifth Amendment rights, I conclude that this is what he is claiming to this court. Of course, were I to conclude that he also claims a direct violation of his Fifth Amendment rights not to be forced to testify against himself, the petition would have to be dismissed for failure to exhaust under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

**3.** Rule 305(C)(1)(b) states in pertinent part that it is mandatory that the defendant:

[W]ho intends to offer at trial the defense of insanity, ... shall, at the time required for filing an omnibus pretrial motion under Rule 306, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific available information as to the nature and extent of the alleged insanity ..., the period of time which the defendant allegedly suffered from such insanity ..., and the names and addresses of witnesses, expert or otherwise, whom the defendant intends to call at trial to establish such defense.

Pa.R.Crim.P., Rule 305(C)(1)(b), 42 Pa.Cons. Stat.Ann. (Purdon 1989).

did he deny firing the shot that killed Officer Washington. His sole defense was insanity and the testimony offered in support of this defense was that of a psychiatrist, Dr. Richard F. Limoges. The psychiatrist testified that, with a reasonable degree of medical certainty, it was his opinion McNeill did not know right from wrong at the time of the crime. (N.T. 571–572).

Dr. Limoges formed his opinion based on his interviews with petitioner, his interviews with McNeill's family and friends, the taped conversations between petitioner and the police at the crime scene and McNeill's past medical history. (N.T. 571–572). Significant to the doctor's determination were statements McNeill made to him at interviews after the crime.

Dr. Limoges particularly considered petitioner's statement on February 28, 1980, that he could not remember anything which happened on January 16, 1980, beginning in the early afternoon until after he was sitting in the police van, following his surrender and arrest. The doctor found this lapse in memory to be significant. (N.T. 534, 543–544).[4] He was also impressed when McNeill told the doctor on October 28, 1980, that he had been hearing a voice inside his head on the day of the crime telling him to kill his wife. (N.T. 557–562). Another factor figuring into Dr. Limoges' conclusion was the psychiatric illness for which petitioner had been hospitalized off and on from October 1962 to February 1964. (N.T. 545–546).

After the defense rested, the Commonwealth then introduced in rebuttal the testimony of Dr. Kenneth A. Kool, the psychiatrist who examined petitioner for the Commonwealth pursuant to the court's order of October 20, 1980. Dr. Kool said that, in his opinion, on January 16, 1980, McNeill experienced "no major mental illness to interfere with his ability to form the intent to pick up the weapon, no major mental illness interfering with his ability to discharge or point the weapon. He was able to form intent in all of the things that he did, . . . ." (N.T. 667–668). It was his opinion that McNeill had the capacity to formulate the intent to kill, to appreciate the nature and quality of his acts and to know the difference between right and wrong. (N.T. 670–671).

Dr. Kool testified to basing his opinion on his own interviews with McNeill, the taped conversations between petitioner and police at the crime scene, McNeill's statement to Detective Michael Chitwood after his arrest, reports from Drs. Limoges, Gilfoil, Gordon and Schwartzman, who had all interviewed petitioner after the crime, and petitioner's psychiatric medical records from the years of 1962 and 1963. (N.T. 660–661). His conclusion relied heavily on records of petitioner's statements made at and after the crime, and, at one point, he referred to statements petitioner made during the psychiatric interviews with McNeill on October 27 and November 3, 1980. (N.T. 662–670).[5]

---

**4.** This is directly contradicted by the testimony and written record of Detective Michael Chitwood who took petitioner's statement at approximately 8:00 P.M. on January 16, 1980, wherein petitioner recalled in detail what he had done on that afternoon. (N.T. 10/30/80 at 312–315). See also trial exhibits C–20, D–2 & D–3.

**5.** Specifically, the doctor testified:

Well, essentially as a result of my examination, this being on October 27, 1980, ... I obtained some background history from Mr. McNeill, I was able to evaluate his mental status as I was examining him. I was able to correlate his statements with information from other sources, and I found nothing that indicated to me any manifestation of major illness or psychosis at the time of the alleged offense. I found a number of things indicative of his awareness of his own person, of his

surroundings, of the people in his surroundings, at the time of the alleged offense. I saw a number of instances where he was in reality contact in terms of knowing what was going on about him.

N.T. at 662. Dr. Kool made further reference to petitioner's interview with him when he testified:

. . . .

[McNeill] expressed anger about this, He made threats toward her about it. She came home, He threatened her with a weapon. He knew it was a weapon. He had no delusion about what it was or what it would do or who she was. He thought of shooting at her at a given point, but decided not to because the child would be injured and he had no intent to injure the child.

Q. Did he tell you that Doctor?

A. Yes.

The jury, agreeing with Dr. Kool, found that petitioner had the capacity to form the requisite intent for murder in the first degree. Petitioner now claims to this court that his trial counsel provided constitutionally ineffective assistance by failing to tell him that he had a right not to talk to the Commonwealth psychiatrist.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set out the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced that defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Id.* at 687, 104 S.Ct. at 2064.

Referring to *Strickland's* prejudice requirement, the Third Circuit has stated that a habeas petitioner must establish "a reasonable probability—one sufficient to undermine our confidence in the outcome— that the jury's verdict would have been different if not for counsel's errors." *United States v. Gray*, 878 F.2d 702, 712 (3d Cir.1989). Thus the questions for this court are: (1) whether petitioner's trial counsel committed "serious error" and (2) if serious error were committed, whether there is a reasonable probability that, absent the error, the jury would have had a reasonable doubt respecting guilt.

At time of petitioner's trial, the Pennsylvania Supreme Court had established that a defendant could be ordered by the court to attend a psychiatric examination but could not be compelled to answer any of the questions asked at that examination. *Commonwealth v. Pomponi*, 447 Pa. 154, 284 A.2d 708 (1971); *Commonwealth v. Byrd*, 421 Pa. 513, 219 A.2d 293 (1966), *cert. denied*, 385 U.S. 886, 87 S.Ct. 181, 17 L.Ed.2d 114 (1966); *Commonwealth v. Musto*, 348 Pa. 300, 35 A.2d 307 (1944). *See also Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974) (testimony from Commonwealth psychiatrist that defendant refused to answer questions on the advice of his lawyer was not a violation of defendant's privilege against self-incrimination). In *Commonwealth v. Hale*, 467 Pa. 293, 356 A.2d 756 (1976), the Court announced that "before answering questions which may be used to incriminate him the person whom the psychiatrist questions should be warned of his rights." *Commonwealth v. Hale*, 467 Pa. at 296, 356 A.2d at 757.[6]

In *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the United States Supreme Court affirmed a decision by the Fifth Circuit Court of Appeals that a state may not use evidence based on a psychiatric examination of a defendant unless the defendant was warned, before the examination, that he had a right to remain silent, was allowed to terminate the examination whenever he wished and was assisted by counsel in deciding whether to submit to the examination. *Id.* at 461, 101 S.Ct. at 1872.

However, the situation in *Estelle* differed materially from the case petitioner brings. There the defendant raised no issue of sanity at the time of trial and offered no evidence regarding insanity at the time of the crime.[7] In the present case,

---

Q. He thought of shooting his wife but hesitated because she had the child?
A. Carrying the child and that the child would be struck.

. . . .

N.T. 663–664.

**6.** The defendant in Hale was told by the examining psychiatrist that the results of his examination would only be used in the sentencing stage of trial. The psychiatrist was then al-

lowed to testify in rebuttal at trial. The Pennsylvania Supreme Court held this to be reversible error and granted the defendant a new trial. *Id.*

**7.** The psychiatrist in Estelle was allowed to testify at the sentencing stage of a capital case where one of the issues the jury was to determine before imposing the death penalty was the future dangerousness of the defendant. The state had never notified defense counsel that the psy-

petitioner notified the court that he would present an insanity defense. As a result, the court ordered a pretrial examination by a psychiatrist for the Commonwealth. McNeill was thereby on notice that, if he offered psychiatric testimony at trial, the Commonwealth would be able to present the evidence that it obtained through this pretrial examination.

In highlighting these factual differences Chief Justice Burger stated for the Court:

> Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case.

*Id.* at 465, 101 S.Ct. at 1874. The holding in *Estelle* was specifically limited to account for the perceived difference:

> A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding.

*Id.* at 468, 101 S.Ct. at 1876. *U.S. v. Byers,* 740 F.2d 1104, 1110–1111 (D.C.Cir.1984).

The Circuit Courts of Appeals are virtually unanimous in holding that, where the defendant interposes at trial the defense of insanity, his Fifth Amendment privilege against self-incrimination is not violated by a court-ordered psychiatric examination; and that, where the defendant introduces psychiatric testimony at trial, the Fifth Amendment does not prevent testimony by the psychiatrist who conducted the court-ordered examination on the issue of sanity. *See, e.g., United States v. Byers,* 740 F.2d 1104, 1113 (D.C.Cir.1984); *United States v. Reifsteck,* 535 F.2d 1030, 1033–1034 (8th Cir.1976); *United States v. Cohen,* 530 F.2d 43, 47–48 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *United States v. Handy,* 454 F.2d 885, 888–889 (9th Cir.1971), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); *United States v. Bohle,* 445 F.2d 54, 66–67 (7th Cir.1971); *United States v. Weiser,* 428 F.2d 932, 936 (2d Cir.1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); *United States v. Albright,* 388 F.2d 719, 723–725 (4th Cir. 1968).[8] These federal courts have never held that the Fifth Amendment requires a defendant, who plans to use an insanity defense at trial, be warned, before making statements to court ordered psychiatrists, that they have a right not to answer questions during this examination.

The Supreme Court has recently addressed a case similar to McNeill's where it was held, *inter alia,* that the use of a psychiatrist's report solely to rebut a defendant's psychological evidence did not violate the defendant's Fifth Amendment rights under *Estelle: Buchanan v. Kentucky,* 483 U.S. 402, 422–423, 107 S.Ct.

chiatrist would be a witness either at trial or at sentencing. The psychiatrist testified that defendant was "a very severe sociopath" and the jury resolved the dangerousness issue against the defendant, imposing the mandatory death sentence. *Id.* at 457–460, 101 S.Ct. at 1870–72 (quoting from the transcript of the proceeding).

**8.** One case from the Third Circuit Court of Appeals dealt with the admissibility of psychiatric testimony offered in rebuttal to an insanity defense, *United States v. Alvarez,* 519 F.2d 1036 (3d Cir.1975). The Third Circuit, however, rooted this decision in the statutory language of the Federal Rules of Criminal Procedure and, as such, it is inapplicable to petitioner's allegation. The court did state in dicta that precedents would make it "difficult to hold that statements elicited in a compelled psychiatric examination could be used to establish sanity, and thus guilt, even when the statements in no way suggested participation in the offense." *Id.* at 1042.

Two other federal circuits chose to limit holdings that the right against self-incrimination was not violated by requiring a defendant who intends to offer evidence of insanity at trial to submit to an examination by a psychiatrist for the prosecution. These courts held that incriminating statements, made by a defendant during such an examination, could not be admitted to establish the defendant's guilt at trial. *United States v. Bohle* 445 F.2d at 66–67; *United States v. Baird,* 414 F.2d 700, 710–711 (2d Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970).

2906, 2917–18, 97 L.Ed.2d 336 (1987). In *Buchanan*, defense counsel had joined with the prosecutor in requesting the court ordered psychiatric evaluation. *Id.* at 410–411, 107 S.Ct. at 2910–11. Also, the psychiatric report which was admitted to rebut the defense testimony of insanity did not describe any statements directly but gave general observations of the defendant's mental state. *Id.* 483 U.S. at 423, 107 S.Ct. at 2918.

There is little evidence in the record to use in determining whether or not petitioner was given warnings before his examination by the Commonwealth psychiatrist. Dr. Kool stated at trial that petitioner "understood something of the nature of [the] examination" and that defense counsel Joseph Schafle, Esquire, attended and remained throughout both of Dr. Kool's examinations of McNeill. (N.T. 656–657).[9]

I am mindful of the difficulty that arises when psychiatric testimony at trial from a prosecution witness, referring to statements made by the defendant, establishes the only element of the crime left for the prosecution to prove. The Circuit Courts of Appeals have developed various justifications in struggling to reconcile their holdings that courts may require a defendant to submit to these examinations with the privilege against self-incrimination. *See United States v. Byers*, 740 F.2d 1104, 1111–1113.[10]

I conclude that the Fifth Amendment of the United States Constitution does not require criminal defendants, who have notified the state that they plan to claim an insanity defense, be given *Miranda* warnings before speaking to a psychiatrist for the prosecution. Consequently, I conclude there is no federal requirement that these defendants be allowed to remain silent throughout a court ordered psychiatric examination.[11]

---

**9.** An evidentiary hearing was granted by the PCHA court on the same claim presented to this court. Unfortunately, this court has not received the transcript of that hearing. Neither the District Attorney's office nor the office of the Clerk of Quarter Sessions could locate a copy upon my request.

The decision of the PCHA court sheds no light on the post-conviction proceedings. The Pennsylvania Superior Court described the PCHA testimony as "six pages of the appellant's testimony, none of which appears to us to be of any relevance to the alleged ineffective assistance of trial counsel. Indeed, trial counsel did not testify nor does it appear they were summoned to testify at the PCHA hearing." *Commonwealth v. McNeill*, No. 1511 Philadelphia 1988, slip op. at 4 (Pa.Super. Dec. 6, 1988) [386 Pa.Super. 650, 555 A.2d 941 (Table)]. In a footnote, the Pennsylvania Superior Court stated the "PCHA transcript deals only with appellant's experience with a British 303, the weapon used to kill the victim, and his averment that the killing was accidental." *Commonwealth v. McNeill*, No. 1511 Philadelphia 1988, slip op. at 5, n. 3 (Pa.Super. Dec. 6, 1988) [386 Pa.Super. 650, 555 A.2d 941, (Table)].

**10.** These various justifications include defendant waiver upon notice of proposed use of the insanity defense, *Pope v. United States*, 372 F.2d 710 (8th Cir.1967) (*en banc*), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968), evidence provided in psychiatric examination was not testimonial in nature, *United States v. Handy*, 454 F.2d 885 (9th Cir.1971), *cert. denied* 409 U.S. 846, 93 S.Ct.

49, 34 L.Ed.2d 86 (1972), defendant's use of expert testimony to establish insanity estopped his assertion of the Fifth Amendment claim, *United States v. Baird*, 414 F.2d 700 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970), and the privilege against self-incrimination narrowly excludes statements brought into evidence on the issue of insanity, *United States v. Bohle*, 445 F.2d 54 (7th Cir. 1971), overruled on other grounds in *United States v. Lawson*, 653 F.2d 299, 303 n. 12 (7th Cir.1981).

I prefer the rationale of then Circuit Judge Scalia when he was writing for the District of Columbia Circuit Court in *United States v. Byers*, 740 F.2d 1104. Justice Scalia held that admission of psychiatric testimony must not be denied because of "the unreasonable and debilitating effect [this denial] would have upon society's conduct of a fair inquiry into defendant's culpability." *Id.* at 1113.

**11.** *Supra*, 1298–99. Unlike interrogation by the police, a defendant who is subjected to a psychiatric examination should not have an absolute right to remain silent. To permit the defendant to remain silent would frustrate the central purpose of the examination, the full and free disclosure of information and thinking processes essential to a meaningful psychiatric diagnosis. *See* Bonnie & Slobogin, The Role of Mental Health Professionals in the Criminal Process: The Case for Informed Speculation, 66 Va.L. Rev. 427, 496–508 (1980). A defendant subjected to a post-indictment competency evaluation will have the benefit of advice from his attorney, which may not be the case in a police

I need not determine whether or not McNeill was told by his lawyer before his examinations with Dr. Kool that he had a right not to answer any of the questions asked of him.[12] Although the state courts require that defendants be so warned, any failure by McNeill's lawyer to advise him of this right was not federal constitutional error and is therefore not grounds for a claim of ineffective assistance of counsel in a federal habeas corpus proceeding. Because petitioner has not shown that counsel's performance was deficient, I make the following:

### RECOMMENDATION

AND NOW, this 7th day of May, 1990, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED. There is *no* probable cause for appeal.

interrogation. *Estelle,* 451 U.S. at 475–76, 101 S.Ct. at 1879–80 (Rehnquist, C.J., concurring in the judgment). Even where warnings are given and advice from counsel is received, it is doubtful these measures will be effective for a defendant with questionable mental stability.

12. In light of the circumstances, it is quite possible that petitioner's counsel concluded it would be in his client's best interest to speak without inhibition when he attended the psychiatric examinations. There was very little current psychiatric evidence offered at trial to support petitioner's claim of insanity. The majority of evidence going to McNeill's state of mind that was recorded within ten years of the date of the crime was written after the crime and consisted of interviews with members of petitioner's family and petitioner's medical experts, not independent sources. (N.T. 660–661).